UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIAN GARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:14-CV-200-CEJ |
| | ) |
| DENNIS J. BARTON, III, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Dennis J. Barton, III, to dismiss for lack of subject matter jurisdiction, pursuant to the *Rooker-Feldman* doctrine, and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Also before the Court is the plaintiff's motion for leave to file a second amendment complaint.[1] The issues are fully briefed.

**I.     Background**

After plaintiff became indebted to St. Anthony's Medical Center for medical services she received, she entered into a payment agreement with the hospital. At some point prior to January 25, 2013, St. Anthony's assigned the plaintiff's debt to defendants Roger Weiss and/ or Consumer Adjustment Company, Inc. (CACI). At all relevant times defendant Barton was the attorney and agent for Weiss and CACI.

---

[1]Plaintiff moved to file a second amended complaint after Barton filed the instant motion to dismiss the first amended complaint. Because Barton states that the revisions in the second amended complaint are "not a meaningful amendment" to the complaint, the allegations in the first and second amended complaints are "exactly the same," and the allegations in the second amended complaint "do not cure the pleading deficiencies" of which he complains [Doc. #37], further briefing of Barton's motion to dismiss is unnecessary. The Court will deem the motion to dismiss as being directed to the second amended complaint.

1

On January 25, 2013, Barton filed a lawsuit styled "*St. Anthony's Medical Center v. Dian Garner*" in the Circuit Court of St. Louis County, to recover $731.45, the amount plaintiff allegedly owed to the hospital. Plaintiff alleges that she never received notice of the lawsuit and, as a result, on March 6, 2013, a default judgment was entered against her for the principal amount of the debt plus accrued interest of $88.01 and post-judgment interest at the rate of 9% annually. Wage garnishment proceedings ensued, resulting in plaintiff's loss of $1,984.39. Plaintiff alleges that Barton deposited the garnished funds into his own account.

In Count I of the second amended complaint, plaintiff claims that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*, by (1) bringing the lawsuit and garnishment proceedings in St. Anthony's name when, in reality, he was acting on behalf of Weiss and CACI; (2) falsely representing that he represented St. Anthony's; and (3) collecting interest and penalty charges that were not authorized under her payment agreement with St. Anthony's. In Count II, plaintiff asserts a claim of abuse of process based on the allegation that the defendants "concocted" the lawsuit Barton filed against her and used it to force plaintiff to pay a debt that she did not owe. In Count III, plaintiff claims that the defendants converted funds that belonged to her through the unlawful garnishment proceedings.

## II. Motion to Dismiss for Lack of Jurisdiction

Barton argues that the Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under that doctrine, federal district courts lack subject matter jurisdiction in actions

seeking review of state court judgments. *Skit Int'l, Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007). However, the doctrine does not bar federal district courts from considering claims "attacking an adverse party's actions in obtaining and enforcing that [state court] decision." *MSK EyEs Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 539 (8th Cir. 2008). Thus, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). "If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* Consequently, *Rooker-Feldman* does not bar an FDCPA claim challenging a defendant's debt-collection practices when resolving the challenge would not necessitate invalidating a state court judgment. *See, e.g.*, *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1162 (D. Minn. 2013) (collecting cases); *Smith v. Kramer & Frank, P.C.*, No. 4:09-CV-802-FRB, 2009 WL 4725285, at *2–3 (E.D. Mo. Dec. 2, 2009) (rejecting *Rooker-Feldman* challenge to FDCPA claims).

Garner alleges that Barton violated the FDCPA by filing a lawsuit on behalf of St. Anthony's when CACI and Weiss were the real parties in interest; collecting more than the amount of the state court judgment, and inflated and illusory interest charges and costs; garnishing funds under the guise that the garnishor was St. Anthony's; and engaging in false, deceptive, harassing, and unfair conduct by representing that St. Anthony's, rather than CACI and Weiss, was the real party in interest. These allegations attack Barton's practices in collecting the debt, rather

3

than the underlying state court judgment, and, as such, these claims are not barred by the *Rooker-Feldman* doctrine. Accordingly, Barton's motion to dismiss the case for lack of jurisdiction will be denied.

Because the Court has subject matter jurisdiction over some of Garner's FDCPA claims, it also has supplemental jurisdiction over her state law claims for abuse of process and conversion. 28 U.S.C. § 1367(a).

### III. Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id.* A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570; *see also id.* at 563 ("no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

When ruling on a motion to dismiss, a court generally may not consider matters outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). It may, however, consider some public records, materials that do not contradict the complaint, exhibits attached to the pleadings, or materials that are necessarily embraced by the complaint. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). In this case, the Court will consider the exhibits attached to the second amended complaint in ruling on the motion.[2] Barton has submitted copies of St. Anthony's assignment of its claim against Garner to CACI; the state court petition; the judgment entered in the state court; medical bills showing that Garner owed St. Anthony's; the motion and order for a special process server in the state court action; and the affidavit of the process server who allegedly served Garner. The state court documents are public records that the Court will consider in ruling on the motion to dismiss. The debt assignment papers and the medical bills verifying the amount of that debt are materials necessarily embraced by Garner's complaint and they, too, will be considered.

A. Discussion

1. **FDCPA**

Garner alleges that Barton's conduct violated the following sections of the FDCPA: § 1692d (barring debt collectors from engaging in harassment or abuse); § 1692e (prohibiting debt collectors from using "any false, deceptive, or misleading representations or means in connection with collection of any debt"); and § 1692f

---

[2]The Court will not consider the exhibits attached to Garner's response to the motion to dismiss.

5

(forbidding "unfair practices," including, as relevant here, collecting any amount not authorized by the agreement that created the debt, or authorized by law).

To state a claim for a violation of the FDCPA, a plaintiff must plead "that she is a consumer and that [the defendant] is a debt collector within the meaning of the statute; that there was an attempt to collect a debt; and that [the defendant] violated, by act or omission, a provision of the FDCPA." *Mayhall v. Berman & Rabin, P.A.*, No. 4:13-CV-0175-AGF, 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014). The parties agree that Garner was a consumer and that Barton was a debt collector within the meaning of the FDCPA, and that Barton attempted to collect a debt. Consequently, Garner's complaint satisfies the first three requirements to maintain an FDCPA claim. As to the final requirement, Garner alleges that several of Barton's acts violated the FDCPA. Some of those allegations state plausible claims for relief, while others are barred by *Rooker-Feldman*:

### a. The Assignment

Whether the assignment from St. Anthony's to CACi was a complete or partial assignment determines whether Garner can state a claim for some of Barton's actions allegedly taken on behalf of St. Anthony's. Missouri law recognizes both complete and partial assignments of non-personal-tort legal claims. *Skaggs Reg'l Med. Ctr. v. Powers*, 419 S.W.3d 920, 922 (Mo. Ct. App. 2014). A complete or "absolute assignment of an entire right or interest works as a divestiture of all right or interest of the assignor; and, for the purpose of maintaining a civil action, the assignee becomes the real party in interest." *McMullin v. Borgers*, 806 S.W.2d 724, 731 (Mo. Ct. App. 1991) (citation omitted). But the divestiture "rule applies only when the *entire* cause [is] assigned." *Skaggs*, 419 S.W.3d at 922 (citation

omitted). Contrariwise, a partial assignment "does not divest the assignor of all right or interest in the thing assigned and the assignor retains sufficient right or interest therein to qualify as a real party in interest in order to maintain a civil action." *Meier v. Boatmen's Bank of Rolla*, 846 S.W.2d 254, 258 n.4 (Mo. Ct. App. 1993) (citation omitted).

Mo. Rev. Stat. § 425.300 does not state unambiguously whether all assignments made pursuant to that statute are complete or partial assignments. Moreover, contrary to Barton's position here (as in another case), "*Skaggs* does not hold as a matter of law that all assignments under § 425.300 are partial assignments." *Mueller v. Barton*, No. 4:13-CV-2523-CAS, 2014 WL 4546061, at *10 (E.D. Mo. Sept. 12, 2014). Whether the assignment from St. Anthony's to CACI was a complete or partial assignment is, therefore, a factual dispute. Thus, Garner's allegation that St. Anthony's completely assigned its interest in the debt to CACI states a plausible claim for relief as to three of Barton's putative FDCPA violations: (1) Barton's naming St. Anthony's as *a party* in the state suit violated § 1692e; (2) Barton's naming St. Anthony's as *the only party* in the state suit, without naming CACI, violated § 1692e; and (3) Barton's manifestations that he represented St. Anthony's violated the FDCPA.[3]

---

[3]Barton's opposition to that allegation rests on a potentially faulty premise that the assignment was only a partial one, so CACI was working for St. Anthony's, and CACI hired Barton to represent St. Anthony's. *See Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 625, 628–29 (Mo. 1995) (en banc) (determining that whether an attorney acted on behalf of another requires, *inter alia*, "establishing as a matter of fact either that an attorney-client relationship exists between the [attorney and purported client] or an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit [the third party]"). Because the nature of the assignment is ambiguous, Garner's plausible allegation that it was a complete assignment, so neither CACI nor Barton was working on behalf of St. Anthony's, is assumed true.

7

### b. The Missouri Circuit Court Judgment

The state court entered default judgment against Garner. This Court is barred by *Rooker-Feldman* from invalidating that judgment or from granting relief that "'would effectively reverse the state court decision or void its ruling.'" *Kramer & Frank, P.C. v. Wibbenmeyer*, No. 4:05-CV-2395-RWS, 2007 WL 956931, at *1 (E.D. Mo. Mar. 6, 2007) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)); *see Feldman*, 460 U.S. 462; *Rooker*, 263 U.S. 413.

> To determine whether *Rooker–Feldman* bars [a plaintiff's] federal suit requires determining exactly what the state court held and whether the relief requested by [the plaintiff] in his federal action requires determining the state court's decision is wrong or would void its ruling. If the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.

*Charchenko*, 47 F.3d at 983.

To enter default judgment against Garner, the state court determined that she owed St. Anthony's a debt of $731.45. The state court also determined that interest in the amount of $88.01 was permitted by Mo. Rev. Stat. § 425.300. Under *Rooker-Feldman*, this Court cannot invalidate those state court determinations. Likewise, to enter default judgment against Garner, the state court necessarily must have found that Garner was properly served with the state court petition, and that St. Anthony's properly demanded payment before seeking the judgment. This Court cannot invalidate those decisions, for to do so would be to effectively undermine the grounds that permitted the state court to render its judgment. Accordingly, Garner's FDCPA claims challenging the debt amount of $731.45, the interest adjudged of $88.01, the improper service, and the efforts to obtain judgment before first demanding payment are dismissed.

### c. Garnishing the Judgment Amount

The Missouri Circuit Court entered default judgment against Garner in the amount of $819.46. While allowing Garner to maintain a claim that garnishing $819.46 from her wages was an FDCPA violation would not directly reverse that judgment, it would effectively do so. *See id.* Someone (Barton, CACI, or St. Anthony's, it has not yet been decided) was entitled to collect $819.46 from Garner. If Garner were allowed to proceed on her claim that garnishing that amount from her wages was improper, and she succeeded, it would in essence render the state court judgment uncollectible and effectively reverse it. *Rooker-Feldman* bars such a claim. Therefore, to the extent that Garner seeks relief from any defendant from the state court judgment amount of $819.46, that claim is dismissed.

### d. Garnishing in Excess of the Judgment Amount

Barton purportedly garnished $1,984.39 from Garner, $1,164.93 more than the Missouri Circuit Court's judgment. The amount collected is over 242% of the judgment, far in excess of the 9% annual interest permitted under Mo. Rev. Stat. § 425.300. Obviously, every dollar in excess of the judgment and lawful interest is not covered by the judgment, so FDCPA claims based on those excesses are not barred by *Rooker-Feldman*. Garner alleges that Barton engaged in a series of deceptive and illegal activities, enumerated more fully above, to collect those excess funds. Accordingly, Garner's complaint states a plausible claim for FDCPA violations based on those activities.

### 2. Abuse of Process

A plaintiff must prove three elements to succeed on a claim for abuse of process under Missouri law:

> (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.

*Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 863 n.4 (8th Cir. 2002) (quoting *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. 1979) (en banc)). "Stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 n.1 (Mo. 1990) (en banc). A plaintiff need not allege that the defendant benefited from the abuse of process, only that the plaintiff was harmed by the process. *Id.* at 493.

Garner alleges that Barton made an improper use of the Missouri state courts, that he had an improper purpose in doing so, and that she was damaged as a result: Barton is alleged to have brought the state court suit on behalf of an entity that he did not represent, St. Anthony's. If the assignment from St. Anthony's to CACI precluded Barton from filing suit in St. Anthony's name, then Barton's suit purportedly on behalf of St. Anthony's was illegal, improper, and perverted. Likewise, Barton's filing of two garnishment application and orders was potentially illegal, improper, and perverted because Barton collected $1,164.93 more than Garner owed, and on behalf of an entity that he did not represent.

Garner contends that Barton had two improper purposes in filing the state suit. First, he sought to enrich himself. Two factual allegations support that assertion: Barton deposited the garnished funds into his bank account, rather than paying St. Anthony's. Barton also double-filed garnishment requests with Garner's employer, such that Barton obtained a windfall of over twice what Garner owed. Second, Barton sought to lull Garner into not exercising her rights under the FDCPA

by falsely claiming that St. Anthony's filed the suit, rather than the debt collectors, Barton, Weiss, and CACI. Those allegations are enough to plausibly suggest that Barton had an improper purpose in filing the state court suit.

Finally, Garner alleges that she was damaged by Barton's tactics when $1,164.93 more than the state court judgment amount was garnished from her wages. Thus, Garner's complaint states a claim for abuse of process.

### 3. Conversion

Garner alleges that Barton unlawfully converted some or all of the $1,984.39 garnished from her wages. Under Missouri law, conversion consists of the following three elements: "'(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession.'" *Mackey v. Goslee*, 244 S.W.3d 261, 264 (Mo. Ct. App. 2008) (quoting *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 15 n.6 (Mo. Ct. App. 2003)). "Conversion is not generally a proper theory when a claim involves money." *Gadberry v. Bird*, 191 S.W.3d 673, 675 (Mo. Ct. App. 2006) (citation omitted). "However, misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose." *Id.* at 675–76 (citation omitted); *see also Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 817 (Mo. Ct. App. 1982).

Garner earned $1,984.39 in wages, Barton obtained possession of those funds and kept control over them, and Garner was thereby deprived of those funds.

Here, the exception to the rule that a conversion claim is not permitted for pilfered currency applies. Garner alleges that Barton did not use the garnished wages for their intended purpose—paying St. Anthony's—but instead diverted the funds garnished in satisfaction of the judgment amount and lawful interest, and all of the excess garnished funds, to his bank account. If those allegations are true, then Barton converted the entire judgment amount, and the excess garnished funds as well. Thus, Garner's complaint states a claim for conversion.

\* \* \* \* \*

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file a second amended complaint [Doc. #36] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement the second amended complaint with an exhibit previously misfiled [Doc. #41] is **granted**.

**IT IS FURTHER ORDERED** that defendant Dennis J. Barton, III's motion to strike plaintiff's second amended complaint [Doc. #35] is **moot**.

**IT IS FURTHER ORDERED** that defendant Dennis J. Barton, III's motion to dismiss [Doc. #15] is **granted in part and denied in part**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2015.